**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEAN A. HANLON,**

                                    **Plaintiff,**

                    **v.**                                        **5:07-CV-747**
                                                                        **(FJS)**

**COMMISSIONER OF SOCIAL SECURITY,**

                                    **Defendant.**
_____

**APPEARANCES**                                **OF COUNSEL**

**AMDURSKY, PELKY, FENNELL**            **GREGORY R. GILBERT, ESQ.**
**& WALLEN, PC**
26 East Oneida Street
Oswego, New York 13126
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **TOMASINA DiGRIGOLI, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL - REGION II**
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

## I. INTRODUCTION

Plaintiff Jean A. Hanlon brought this action pursuant to the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner"), denying her application for Disability Insurance Benefits ("DIB").  Currently before this Court are Plaintiff's and Defendant's cross-motions for judgment on the pleadings or, in the alternative, for summary judgment.

## II. BACKGROUND

Plaintiff, then forty-five, filed an application for DIB on or about August 19, 2004.  *See* Administrative Record ("AR") at 16.  In her disability report, Plaintiff cited spinal stenosis and carpal tunnel syndrome in both arms as her disabling conditions.  *See id*. at 88.  The Social Security Administration denied her request on November 22, 2004.  *See id*. at 16, 59-61.  Plaintiff filed a timely Request for a Hearing on December 3, 2004, which was held before Administrative Law Judge ("ALJ") Elizabeth W. Konnecke in Syracuse, New York, on June 8, 2005.  *See id*. at 353.  Attorney Gregory Gilbert represented Plaintiff, who appeared and testified.  *See id*. at 353, 355.  ALJ Konnecke denied Plaintiff's claim on September 21, 2005.  *See* AR at 50-57.  Plaintiff filed a timely request for review on November 21, 2005.  *See id*. at 39-46.  The Appeals Council remanded the case for further consideration of the evidence on February 3, 2006.  *See id*. at 36-38.  A second hearing occurred on December 11, 2006, before ALJ Konnecke in Syracuse, New York.  *See id*. at 378.  Once again, Attorney Gregory Gilbert represented Plaintiff, who appeared and testified.  *See id*. at 378, 380.  Victor Alberigi, a vocational expert ("VE"), testified via telephone.  *See id*. at 378, 382.  The VE opined that Plaintiff could perform the work of a charge account clerk, a telemarketer,

or a food order clerk.  *See id* at 388-89.  The ALJ again denied Plaintiff's claim on February 16,

2007.  *See id*. at 16-27.

  In her February 2007 decision, ALJ Konnecke made the following findings:

> 1) Plaintiff last met the insured status requirements of the Act on December 31, 2008.
> 2) Plaintiff has not engaged in any substantial gainful activity since March 1, 2004, the amended alleged onset date.
> 3) Plaintiff experiences cervical spinal stenosis and bilateral carpal tunnel syndrome, status post repair on the right and left sides.  Both are severe impairments.
> 4) Plaintiff's impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").
> 5) Plaintiff has the residual functional capacity ("RFC") to lift or carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday.  Plaintiff is unable to engage in repetitive bending or twisting of the neck, repetitive use of the hands, and overhead lifting.
> 6) Plaintiff is unable to perform any of her past relevant work.
> 7) Plaintiff was forty-eight years old at the time of the decision, defined as a younger individual, aged forty-five to forty-nine.
> 8) Plaintiff has at least a high school education and can communicate in English.
> 9) Plaintiff has no transferrable skills to either the light or sedentary level of exertion.
> 10) Given Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff can perform.
> 11) Plaintiff has not been under a "disability" as defined in the Act from March 1, 2004, through the date of the ALJ's decision.

*See* AR at 19-27.

  The ALJ's February 16, 2007 decision became the Commissioner's final decision on July 7,

2007, when the Appeals Council of the Social Security Administration denied Plaintiff's request for

review.  *See* AR at 6-9.

  Plaintiff commenced this action on July 18, 2007, *see* Dkt. No. 1, and filed a supporting

brief on March 7, 2008, *see* Dkt. No. 7.  Defendant filed a response brief on July 31, 2007.  *See* Dkt. No. 10.


# III. DISCUSSION

## A.    Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it.  *See* 42 U.S.C. § 405(g).  The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).

To be eligible for DIB, a claimant must show that she suffers from a disability within the meaning of the Act.  The Act defines "disability" as an inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months.  *See* 42 U.S.C. § 1382c(a)(3)(A).  To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in substantial gainful activity.  *See* 20 C.F.R. §§ 416.920(b), 416.972.  If so, the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in substantial gainful activity, the ALJ determines if the claimant has a severe impairment or combination of impairments.  *See* 20 C.F.R. § 416.920(c).  If not, then the claimant is not disabled.  *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the Listings.  If so, the claimant is disabled.  *See* 20 C.F.R.

§ 416.920(d).

4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do her past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, she is not disabled. *See* 20 C.F.R. § 416.920(f).

5) If the claimant cannot perform her past relevant work, the ALJ determines if she can perform other work, in light of her residual functional capacity, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then she is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive disability benefits if she cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the

Commissioner for the fifth step. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998).

**B.      The ALJ's Step Three conclusion and the necessity of an updated medical opinion**

*1. Listings §§ 1.02B[1] and 1.04A*

The characteristics of a disability to the extremities or joints under 20 C.F.R., Part 404,

Subpart P, Appendix 1, § 1.02 are

gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02.

Paragraph B of § 1.02 states that, in addition to the above requirements, a plaintiff's medical

---

[1] Plaintiff, in her March 7, 2008 memorandum of law, did not argue that her injuries met the requirements of § 1.02B. *See generally* Dkt. No. 7. However, in her request for review of the ALJ's first decision, Plaintiff argued that her limitations constituted a disability under § 1.02B. *See* AR at 39. Accordingly, the ALJ addressed § 1.02B in her second decision.

condition must include the "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively[.]"  20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.02B.

Section 1.04A defines spinal disorders as "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04.  Paragraph A of Section 1.04 states that, in addition to the above requirements, a plaintiff's medical condition must include "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]"  20 C.F.R., Part 404, Subpart P, Appendix 1, § 1.04A.

In the instant matter, ALJ Konnecke found that Plaintiff had cervical spinal stenosis and bilateral carpal tunnel syndrome, both of which were "severe" impairments within the meaning of the regulations, and which were found in the Listings at § 1.02B and § 1.04A, respectively.  *See* AR at 19.  However, the ALJ found that these impairments were not severe enough to meet or medically equal one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1 (the "Listings").  *See id.* at 21.

Regarding § 1.02B, which pertains to dysfunction of the joints in the extremities, the ALJ reasoned that the extent of Plaintiff's daily activities indicated that her condition did not meet the criteria set forth in the Listings.  *See* AR at 22.  Regarding § 1.04A, which pertains to spinal disorders, the ALJ reasoned that the record did not contain sufficient evidence of compromise of the

nerve root to meet the Listing criteria.  *See* AR at 21.

The ALJ did not err in finding that Plaintiff's limitations were not severe enough to constitute an impairment listed in the Listings.  Plaintiff's conditions place her in pain, but a finding of disability requires that Plaintiff have more than the inability to work without pain.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).  Plaintiff's conditions must prevent her from performing any type of substantial gainful employment in order for the ALJ to determine that she is under a disability.  *See* 42 U.S.C. § 423(d)(2)(A).  Plaintiff's daily activities indicate that her limitations are not so severe as to preclude gainful employment.  At her first hearing, Plaintiff testified to vacuuming and performing other housework tasks and buying groceries, albeit with some help from her husband.  *See* AR at 372.  She also testified to her ability to sit and stand for approximately one hour at a time and to walk approximately a quarter of a mile.  *See* AR at 368.  When Plaintiff met Dr. Shayevitz, she stated that she cooked on weekends, performed house cleaning twice per week, washed laundry three times per week, shopped every other week, and performed self-care.  *See* AR at 220.  Accordingly, the Court finds that substantial evidence supports the ALJ's finding that Plaintiff's conditions are not so limiting as to meet or medically equal an impairment listed in the Listings.

### 2. Updated medical opinions

For cases at the ALJ or Appeals Council level, the ALJ or Appeals Council is ultimately responsible for deciding whether a plaintiff's impairments meet or equal the Listings.  *See* 20 C.F.R. § 404.1526(e); SSR 96-6p, *3.  In making this determination, an ALJ or the Appeals Council must obtain an updated medical opinion from a medical expert in one of two situations.  *See* SSR 96-6p,

at *4  The first situation occurs  where "no additional medical evidence is received, but in the opinion of the [ALJ] or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable[.]"  *Id*.  The second situation occurs where "additional medical evidence is received that in the opinion of the [ALJ] or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments." *Id*.

Here, Plaintiff's case does not appear to fit within either of the two situations outlined in SSR 96-6p.  First, neither the ALJ nor the Appeals Council represented that anything in the case record suggested that a judgment of equivalence could be reasonable.  Second, there is no indication that either the ALJ or the Appeals Council received additional medical evidence that contradicted the medical findings in the record.  Moreover, Plaintiff makes no effort to explain how her situation might meet the criteria of SSR 96-6p.  Without such an explanation and in the absence of any other indication that the ALJ was required to obtain an updated medical opinion, the determination of equivalence is for the ALJ alone.  *See* 20 C.F.R. § 416.926(e).

Accordingly, the Court finds that the ALJ did not err by not obtaining an updated medical opinion and finds that substantial evidence supports the ALJ's Step Three assessment.

**C.      Plaintiff's credibility and the VE's testimony regarding Plaintiff's ability to work**

*1. Plaintiff's subjective statements of limitation*

A plaintiff's statements about her condition, on their own, are not enough to establish disability.  *See* 20 C.F.R. § 404.1529; SSR 96-7p, *1.  The ALJ must consider a claimant's observable signs and laboratory findings, as well as reported symptoms.  *See* 20 C.F.R. § 404.1529. A plaintiff's subjective complaints of pain and limitation are "'entitled to great weight where . . . [they are] supported by objective medical evidence.'"  *Futia v. Astrue*, No. 1:06-CV-0961, 2009 WL 425657, *6 (N.D.N.Y. Feb. 19, 2009) (quoting *Simmons v. U.S.R.R. Retirement Bd.*, 982 F.2d 49, 56 (2d Cir. 1992)).

If a plaintiff's testimony is not fully supported by clinical evidence, the ALJ must employ a two-step process to evaluate a plaintiff's reported symptoms.  *See* SSR 96-7p, at *2.  First, the ALJ must determine if the plaintiff has medically determinable impairments that could produce the alleged symptoms.  *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2.  Second, if impairments do exist, the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which the symptoms limit the plaintiff's ability to work.  *See* 20 C.F.R. § 404.1529(a); SSR 96-7p, at *2.  In so doing, the ALJ must consider (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to relieve her pain or other symptoms; (v) other treatment that the claimant receives or has received to relieve her pain or other symptoms; (vi) any measures that the claimant takes or has taken to relieve her pain or other symptoms; and (vii) any other factors concerning the claimant's functional limitations and restrictions due to her pain or other symptoms.  *See* 20 C.F.R. § 416.929(c)(3)(i)-(vii); SSR 96-7p, at *2.

In addition, where an ALJ assesses a plaintiff's subjective statements of pain in light of

medical evidence that indicates that the plaintiff can work and finds that the plaintiff's statements cannot overcome the medical evidence to the contrary, "there is no need for further articulation by the ALJ regarding the plaintiff's credibility." *Francis v. Astrue*, No. 3:09-CV-1826, 2010 WL 3432839, *4 (D. Conn. Aug. 30, 2010).

Here, the ALJ properly considered Plaintiff's complaints of pain.  After establishing that Plaintiff had a medically determinable impairment capable of producing the alleged symptoms, the ALJ considered these symptoms in light of Plaintiff's daily activities.  She also evaluated  the intensity of the symptoms; and, by considering and discussing all medical opinions, the ALJ considered Plaintiff's treatment and Plaintiff's efforts to relieve symptoms.  The ALJ therefore correctly followed SSR 96-7p and balanced Plaintiff's complaints against the medical reports in the record.  Plaintiff's daily activities, as described in the record, belie her claims of total inability to engage in substantial gainful employment.  As a result, under *Francis*, the ALJ did not need to discuss Plaintiff's credibility any further.

Consequently, the Court finds that the ALJ did not err in her assessment of Plaintiff's credibility.

### 2. ALJ's adoption of the VE's opinion

A VE's testimony will not constitute substantial evidence to support an ALJ's decision where the ALJ relies on a VE's opinion regarding a hypothetical claimant whose limitations do not mirror the plaintiff's.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114-15 (2d Cir. 1981); *see also Gilliam v. Califano*, 620 F.2d 691, 693-94 (8th Cir. 1980) (holding that a VE's testimony was "fatally deficient" where the hypothetical question did not identify all of the claimant's limitations (citations

omitted)).

However, where the ALJ provides a hypothetical to the VE that corresponds to a plaintiff's RFC, and the VE opines on that hypothetical, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue,* 361 Fed. Appx. 176, 179 (2d Cir. 2010) (citation omitted).

The ALJ posed a hypothetical to the VE, which mirrored the ALJ's conclusion about Plaintiff's RFC and which substantial medical evidence supported. *See* AR 344-47. This hypothetical involved someone of Plaintiff's age, education and work history who could lift and carry twenty pounds occasionally and ten pounds frequently. *See id.* at 387. This person could stand or walk for six hours of an eight-hour work day and must avoid repetitive bending or twisting of the neck, as well as repetitive use of the hands and overhead lifting.[2] *See id.* The VE found that such a person could perform the work of a charge account clerk, a telemarketer, or a food order clerk. *See id.* at 388-89.

The ALJ did not err when she relied on the VE's testimony regarding this hypothetical because it correlated with Plaintiff's RFC. Nor did the ALJ err when she chose not to rely on the VE's opinion regarding hypotheticals that Plaintiff's counsel posed because those hypotheticals did not mirror Plaintiff's limitations. Consequently, the Court finds that the ALJ did not err when she determined that Plaintiff retained the ability to perform work that exists in significant numbers in the national economy.

---

[2] The limitations of the hypothetical claimant can be found in Dr. Perkins' opinion, the April 11, 2004 functional capacity evaluation, Dr. Carr's opinion, Nurse Practitioner Higgins' opinion, and Dr. Shayevitz's opinion.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for judgment on the pleadings is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: December 17, 2010
     Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge